is yours. Yes. Good morning. I'm still David Porter, and I represent the appellant Derek Lee Alfred. The issue in this case. You know who David Porter was? I believe an admiral in the Civil War. The grandson of David Farragut. Who? David Farragut, after whom Farragut Square in Washington, D.C. is named. How could he have been the grandson of Farragut? Because they were both down there together. They were, they were contemporary? Yeah, Farragut was in Mobile Bay, and I think that. Was he counting against the Siege of Vicksburg, you know? I have to check that out. But go ahead. Well, I'm not his namesake anyway. The issue in Mr. Alfred's case is whether a third-strike life sentence with a mandatory minimum term of 26 years for reckless driving while evading a police officer, which offense is a misdemeanor in the majority of states, violates the Eighth Amendment's prohibition on cruel and unusual punishments. Now, the respondent submits that the state court's application of Rummel and Harmelin was objectively reasonable. Well, the state court actually did not rely or cite the Harmelin case, and as far as its citation to Rummel is concerned, it was in error, because it says, we are unable to conclude his sentence, quote, shocks the conscience and offends fundamental notions of human dignity, unquote. Well, that is not a quote from Rummel v. Estelle. It is not the United States Supreme Court's gross disproportionality test that has been to test from people, from In re Lynch, which is the state court's application of its own standard for cruel or unusual punishments. So this is a case like the Ninth Circuit cases, where the California courts apply Wheeler instead of Batson in habeas corpus proceedings, and therefore, as this Court has held numerous times, AEDPA deference is not to be granted. So to paraphrase Justice Scalia, we are in Ewing land, not in Andrade land. Now, why is this case different than Ewing? It is distinguishable from Ewing, first of all, in the much more fulsome nature of Mr. Ewing's prior offenses. He was convicted in 1984 for theft, 88 for felony grand theft auto, 90 for petty theft with a prior, 92 for battery, 92 for theft, 93 for burglary, February 93, possession of drug paraphernalia, July 93, appropriating lost property, September of 93, unlawful possession of a firearm, and then in October and November of 1983, he committed three burglaries and one robbery while armed with a knife. But the more important distinction, I think, between our case and Ewing is that in Well, Euclid didn't do so bad for himself either. He was much less busy. charges of robbery, with personal use of a firearm, extortion, grand theft, escape. Not so bad. He was not quite as busy as Mr. Ewing, I would suppose. Not as busy, but you don't have to be as busy. But he did have Ewing is not a floor. He did have five years, Your Honor, of parole, which he successfully completed from 1983 to 1988, which Mr. Ewing cannot claim. I'm sorry, from when to when? From 83 to 88. Yeah, but then in 89, he gets extortion, grand theft, escape. He stopped being less clever. Started getting caught again. The scourges of drug and alcohol addiction, Your Honor. But the more important thing about extinguishing It's going to solve the problem of having incoming crimes if we leave him where he is. I'm sorry, I didn't understand. If we leave him where he is, it's going to solve that problem. Well, if we left all criminals, people who have been convicted where they are, we would get rid of a lot more crime, too, Your Honor. The question is whether it's consistent with the Eighth Amendment's prohibition against cruel and unusual punishments. We might disagree with the state court, but why is that objectively unreasonable? You look at the dissent in the Ramirez case. Judge Kleinfeld indicates that clear error is not enough. And then he goes on to say the standard is that's quite a standard. And to get over that standard, I mean, that's a hurdle you've got to go over, and it's huge. So how do you get over it? The state court feels one thing. The state legislature passes this law. This man persists in committing crimes. He committed a crime that was very, very dangerous, going down a freeway at 90 miles an hour with his lights off, goes through 12 intersections, could have killed somebody. And you say that it would be objectively unreasonable for the state courts to determine that that merited this sentence? You're absolutely correct, Your Honor. It is a very high standard that Congress has set and that the court has interpreted. And that's why we need to go back to the Supreme Court's rulings and its emphasis on the fact that you must use objective factors to the extent possible. But what wasn't objective factors that I just gave you? I gave a bunch of stuff that sounds to me like this guy's a bad actor and he ought to stay where he is. Your Honor, in Ewing, the court emphasized the fact that theft of $1,200 in property is a felony under federal law and in the vast majority of states. That is an objective factor that you can look to. He's committed offenses that could put people's, other people's lives in jeopardy. I'm not saying that that's what they looked at. You know, what county did this come out of? Sacramento. Sacramento. I mean, does the DA there exercise discretion on the three strikes? Like in L.A., they don't file on three strikes unless the, you know, unless the third strike is a violent crime. What do they do in Sacramento? In Sacramento, it's kind of Sacramento is between Los Angeles and San Francisco and Bakersfield is my understanding of it, that they do not prosecute all possible three strikes cases as three strikes cases, but they are much more aggressive than either Los Angeles, which has a written policy now under Steve Cooley, or San Francisco in prosecuting three strike cases. This crime is a wobbler, right? Yes, it was, Your Honor. And it wobbled up and it didn't wobble down, according to the Superior Court judge. That is correct. So what does that do? What does that have to do with the equation? Well, as the Supreme Court in Ewing made clear, the simple fact that it is a wobbler offense is not determinative one way or the other. The judge here decided to exercise his discretion not to reduce it to a misdemeanor. I think the more important point, though, is the fact that in this case, the crime that he committed, the current triggering crime, is not a felony in the majority of the states. But it is in California, and the trial judge made it a felony. That's true, Your Honor, but the Supreme Court has emphasized that you must use objective factors to the extent possible, and they do this inter-jurisdictional analysis to determine whether — Doesn't Amiraz involve a two-step — you know the case I'm talking about? Yes, Your Honor. We submitted supplemental — Amiraz Castro? Yes. We submitted supplemental briefing on Monday. This is a two-step inquiry? We don't even get to compare to other states unless we get past the first hurdle? Yes, Your Honor. So we shouldn't even be talking about — how do you get past the first hurdle in Amiraz? The first hurdle compares the harshness of the penalty to the gravity of the crime. The harshness of the penalty here is a life sentence, the second-most serious harsh penalty in California. Well, it was the second-most harsh. Well, it is an indeterminate term, Your Honor, but how many people are — on life sentences are being paroled nowadays? Well, the — He has an absolute minimum term of 26 years. Right. 26 to life, yeah. Yes. And that is an absolute minimum term. There is no time for good credit, no credits for a third striker. Are you suggesting we just look at the last crime and not look at his history? No, not at all, Your Honor. Since the last one you described, would you say it was a serious crime? The last crime is not a serious crime as categorized by the California legislature, Your Honor. It is neither a serious crime nor a violent crime. By the state legislature? Yes. Would you describe what happened? Do we have to do the Taylor analysis here, or is this — I can look at the facts? The courts have never discussed the kind of Taylor-modified categorical approach in this setting, but I think that you do have to look at the factual scenario. I can look at the facts. Yes. I can look what happened that night as he's racing down the freeway at 90 miles an hour with his lights out and through all the intersections. That's true, and no one was injured and no property was damaged, Your Honor. Oh, he's lucky. If you're going to look at the facts, I think the court is obligated to look at all the facts. Okay. Thank God. Thank you. Otherwise, you'd be defending a murder case. Your Honor, I live very close to actually where he came off of the freeway. All right. But I think the point is that, yes, you do consider the current crime in the context of the person's criminal history. That's the point of Ewing and Andrade, I believe. And in this case, you know, we have the two prior robbery convictions that were the qualifying strikes were from 1980. Hopefully 18 years. All this other stuff in between, you know. There were other crimes in between, Your Honor, and I'm not minimizing those. But the question remains, is in light of that history a life sentence? Let me just tell you something. Yes. All right. You know, we've had cases where the third strike was a pizza, huh? We've had one case here, which I thought was pretty bad, where the third strike, some guy, I think he was homeless, went into a supermarket, and he swiped a six-pack of beer, and he went behind the supermarket, sat down, going to enjoy himself, opened up one can, just started to take a drink of that beer, and they nabbed him. See? And you know what he got for that? Twenty-eight to life. And, you know, the worst part of it was they didn't even let him finish the beer. So, you know, you got that. And then we had another guy. I mean, I just said it. Then we had another one where this young Mexican guy went in there because his cousin couldn't pass the driver's test because he couldn't whatever. Read English. Literate. Right. So he went in there to take the driver's test in his cousin's name. And, of course, they caught him when he was looking at crib notes, see? And outside. And he was convicted of, I think, perjury they called it. Huh? Yes, Your Honor. He got 26 to life. I thought that was pretty bad. But all these things, you know. So you got one here. He kind of doesn't stack up like he did so badly compared to some of these other good people. Well, Your Honor, all I can say is that when tremendous injustices are done, that. Listen, I don't like this three strikes law. I think it's bad. But, you know, there it is. There it is. And a lot of DAs aren't pressing it in California. But, you know, when you got a guy going 90 miles down the freeway and has his lights off, it's just like a cruise missile, you know. He's just lucky. He's lucky he's alive and he can go to prison. So, you know, I'll tell you this. You do a very good job for your clients. And, okay, let's hear what the State has got to say. Thank you, Your Honor. Yeah, well, let's just see how smart the State is. Want to say anything? Your Honor, I don't think I could have said it any better. What? I don't think I could have said it any better. Well, you know, you could snatch maybe defeat from the jaws of victory. Perhaps I should sit down quickly. Does the Court have questions? I want you to go back to that office and tell everybody how wonderful we are. Well, they'll get the recording, I think, after 12 o'clock today. There are a couple of things I would like. Excuse me? No, go ahead. Does the Court have questions? Then we will submit it on the brief. Good argument. Thank you. Well, we've come to the end of the line. Let him respond to that argument. Oh, you want to respond? Go ahead. I think I'll yield by making it four minutes. No, we'll give you it. I mean, 33 seconds. Can I go back on the other case? The next time you come and argue, you remind me, and I'll give you 33 seconds. It's in the bank. Okay. Thank you. It's been a long week for us. We've had something like six filing cases. Forty-two appeals. Okay. See you later. All rise. This Court, in this session, stands adjourned. Thank you.
judges: Pregerson, Kozinski, Rhoades